United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA MCDONALD, | Case No.: CV 13-02334-KAW |
| Plaintiff, | ORDER GRANTING DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant. | (Dkt. No. 4) |

On May 30, 2013, Defendant Wells Fargo filed a motion to dismiss Plaintiff Linda McDonald's complaint. (Def.'s Mot. to Dismiss, "Def.'s Mot.," Dkt. No. 4.)  On December 5, 2013, the Court held a hearing, and after careful consideration of the parties' arguments, for the reasons set forth below, the Court GRANTS Well Fargo's Motion to Dismiss in full and without leave to amend, because any amendment to the pleadings would be futile.

## I.   BACKGROUND

Plaintiff Linda McDonald filed this action in Alameda County Superior Court on April 19, 2013. On May 22, 2013, Wells Fargo removed the case to federal court.

Plaintiff's complaint contains five causes of action against Wells Fargo for 1) fraudulent inducement to breach of contract; 2) TILA; 3) fraud and conspiracy to commit fraud; 4) California Civil Code § 2923.5 and request for declaratory relief; and 5) predatory lending in violation of truth in lending. [1] (*See* Compl., Dkt. No. 1, Ex. A.)

---

[1] In contrast, the complaint's caption lists seven causes of action, but the body of the complaint contains only five causes of action.  Accordingly, the operative complaint is limited to those five causes of action contained in the body of the complaint.

United States District Court
Northern District of California

Plaintiff alleges that she obtained a residential mortgage loan in 1998 from World Savings Bank (since acquired by Defendant Wells Fargo) for the Subject Property, located at 7430 Halliday Avenue, Oakland, California. (Compl. ¶ 3.) The deed of trust was recorded by the Alameda County Recorder's Office. *Id.*  Plaintiff submitted loan modification requests in July 2009 and January 2011, which resulted in "delays, lost documents, staff changes, and evasive actions." *Id.*

Plaintiff further contends that the economic collapse resulted in her filing for Chapter 7 Bankruptcy in 2010. (Compl. ¶ 4.)  During the bankruptcy process, she allegedly discovered that there were a number of "procedural improprieties" involving violations of the Truth in Lending Act (TILA), the Real Estate Settlement Procedures Act (RESPA), and the Equal Credit Opportunity Act, as well as "underwriting issues."  (Compl. ¶ 6.)

On May 30, 2013, Wells Fargo filed a motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

On September 13, 2013, Plaintiff finally responded to the Court's order to show cause, and filed an opposition to Wells Fargo's Motion to Dismiss. (Pl.'s Opp'n, Dkt. No. 18.) Plaintiff's Opposition, however, consists almost entirely of boilerplate language, and, among its deficits, addresses causes of action that do not appear in Plaintiff's complaint, including negligence and unjust enrichment. (Pl.'s Opp'n at 15, 19.)  The Court also notes that the Opposition repeatedly refers to a first amended complaint, of which there is no such pleading.

On September 17, 2013, Wells Fargo filed a "response" to Plaintiff's "Amended Opposition" to inform the Court that Plaintiff's Opposition resembled "a form pleading drafted on behalf of Plaintiff by someone else, perhaps a paralegal, who has offered it to other litigants acting in *pro per*, in Northern California." (Dkt. No. 19 at 2.)  Attached as Exhibit A was a virtually identical pleading filed in the U.S. District Court for the Eastern District of California. *See Mullins v. Wells Fargo Bank, N.A.,* Case No. 2:13-cv-00453-JAM-KJN (E.D. Cal.). Given that the several of the arguments raised in Plaintiff's Opposition bear no relation to the complaint, coupled with the close semblance to pleadings in other mortgage cases, the Court

2

1   believes that Plaintiff is utilizing a document preparer or another resource in drafting her

2   pleadings.

3          On September 20, 2013, the Court issued an order stating that it considered Plaintiff's

4   September 13, 2013 filing to be an opposition to Wells Fargo's Motion to Dismiss, and giving

5   Wells Fargo seven days to file a formal reply.  (Dkt. No. 21.)  Wells Fargo did not file a reply, so

6   the motion is fully briefed.

7          On December 5, 2013, the Court held a hearing, at which the parties confirmed that

8   Plaintiff is not currently in default, and all causes of action concern conduct at either the time of

9   loan origination or loan modification.

## II.       LEGAL STANDARD

### A.  Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6)

12         The Federal Rules of Civil Procedure require a complaint to contain "a short and plain

13  statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Pro. 8(a)(2).

14  However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more

15  than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

16  do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007) (quoting *Conley v. Gibson*, 355 U.S. 41,

17  47, (1957)).  Claims based on fraud, including state-law causes of action, must also meet the

18  additional requirements of Federal Rule 9(b), that the circumstances of the fraud be pleaded with

19  particularity.  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103 (9th Cir. 2003).

20         Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on

21  the failure to state a claim upon which relief may be granted.  A motion to dismiss a complaint

22  under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v.*

23  *Black*, 250 F.3d 729, 732 (9th Cir. 2001).

24         In considering a 12(b)(6) motion, the court must "accept as true all of the factual

25  allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)

26  (citation omitted), and may dismiss the case "only where there is no cognizable legal theory" or

27  there is an absence of "sufficient factual matter to state a facially plausible claim to relief."

28  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

United States District Court
Northern District of California

3

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted).

A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are not adequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court dismisses the complaint, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*quoting Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

**B.  Request for Judicial Notice**

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a 12(b)(6) motion to dismiss for failure to state a claim. *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001).  A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b); *United States v. Bernal–Obeso*, 989 F.2d 331, 333 (9th Cir.1993).  "[A] court may take judicial notice of 'matters of public record,'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and

1   whose authenticity no party questions, but which are not physically attached to the pleading"

2   without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary

3   judgment.  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by

4   *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  The court need not accept as

5   true allegations that contradict facts which may be judicially noticed.  *See Mullis v. United States*

6   *Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

**III.DISCUSSION**

7

8       **A.  Request for Judicial Notice**

9           As a preliminary matter, Defendants ask that the Court take judicial notice of a number of

10  documents in support of its motion to dismiss.  (Req. for Judicial Not., "RJN," Dkt. No. 5.)  The

11  documents are purportedly true and correct copies of: A) a Deed of Trust dated June 1, 2006 and

12  recorded in the Alameda County Recorder's Office; B) a) a Certificate of Corporate Existence

13  dated April 21, 2006 issued by the Office of Thrift Supervision certifying that World Savings

14  Bank, FSB, is a federal savings bank; b) a letter dated November 19, 2007 on the letterhead of

15  the Office of Thrift Supervision authorizing a name change from World Savings Bank, FSB to

16  Wachovia Mortgage, FSB; c) the Charter of Wachovia Mortgage, FSB, signed by the Director of

17  the Office of Thrift Supervision; d) Official Certification of the Comptroller of the Currency

18  stating that effective November 1, 2009, Wachovia Mortgage, FSB converted to Wells Fargo

19  Bank Southwest, N.A., which merged with and into Wells Fargo Bank; e) a printout from the

20  website of the Federal Deposit Insurance Corporation, showing the history of World Savings

21  Bank, FSB; C) Property Profile Report printed May 29, 2013, from the website of Chicago Title

22  Company, showing that no Notice of Default had been recorded against the subject property; D)

23  a docket sheet for the United States Bankruptcy Court, Northern District of California Chapter 7

24  Bankruptcy Case No. 10-70625, titled *In re Linda McDonald*; and E) United States Bankruptcy

25  Court, District of California Chapter 7 Voluntary Petition and Schedules filed and entered on

26  September 16, 2010, in Case No. 10-70625, entitled *In re Linda McDonald*.

27           Plaintiff's "amended" opposition (Dkt. No. 18) does not address Defendant's request for

28  judicial notice, and so Plaintiff is not deemed to dispute the authenticity of any of the exhibits.

United States District Court
Northern District of California

United States District Court
Northern District of California

As Plaintiff has not disputed the authenticity of Exhibit A, the Court finds that the exhibit is a true and correct copy of an official public record, whose authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. See Fed. R. Evid. 201(b).

As for the documents in Exhibit B, Defendants argue that they are appropriate for judicial notice because they "reflect the official acts of United States' executive departments."  The California Evidence Code provides that judicial notice is proper for documents that reflect the acts of executive agencies of the United States government.  *See* California Evidence Code§ 452 (c) (judicial notice may be taken of official acts of the legislative, executive or judicial departments).  Some district courts in California follow the California Evidence Code by judicially noticing official acts of the OTS, the Comptroller of the Currency, and the FDIC.  *See*, *e.g.*, *Coppes v. Wachovia Mortgage Corp.*, 2010 WL 4483817, at *2-3 (E.D. Cal. 2010) (collecting cases).  As Plaintiff has not objected to the authenticity of these exhibits, the Court will take judicial notice of them.

Exhibit C, which Defendant claims is a Property Profile Report printed May 29, 2013, from the Chicago Title Company website that purports to show that no Notice of Default had been recorded against the subject property.  Defendant argues that this document "is a true and correct copy of a document reflecting official acts of the executive branch of the County of Alameda, State of California." (RJN at 3.)  The Court can take judicial notice of documents whose authenticity, and the veracity of the facts contained within it, could not reasonably be questioned.  Wells Fargo does not, however, provide sufficient information in the accompanying declaration to explain how this exhibit reflects the official acts of the executive branch of the County of Alameda.  The Court can only conclude that it was included, because it does not contain a notation providing that a notice of default was filed.  At the hearing, Defendant withdrew its request for judicial notice as to Exhibit C, as Plaintiff acknowledged that she was behind on her payments, but not currently in default.

///

///

1    The Court will take judicial notice of Exhibits D and E, because they are copies of court

2    records.  *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("a court may take judicial

3    notice of its own records in other cases").

4    For the reasons explained above, Defendant's Request for Judicial Notice is granted,

5    except as to Exhibit C.

6    **B.   Motion to Dismiss**

7    i.   <u>Fraud Claims (Claims 1 & 3)</u>

8    Plaintiff's first and third claims are titled "Fraudulent Inducement to Breach of Contract"

9    and "Fraud and Conspiracy to Commit Fraud."  The factual basis underlying these claims is

10   unclear.  In the first claim, Plaintiff writes, without further explanation, that she was

11   "fraudulently induced to breach the contract with defendants."  (Compl. ¶ 10.)  In the third claim,

12   she alleges that Defendant was "leading plaintiffs [sic] down a Primrose Path, reassuring them

13   that they were in fact getting a loan modification, defendant were also actively foreclosing on

14   plaintiffs' property."  (Compl. ¶ 24.)

15   Claims sounding in fraud are subject to the heightened pleading requirements of Federal

16   Rule of Civil Procedure 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir.

17   2009) (a plaintiff alleging fraud must state with particularity the circumstances constituting

18   fraud).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of

19   the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent]

20   statement, and why it is false."  *United States ex rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637

21   F.3d 1047, 1055 (9th Cir. 2011).

22   Here, Plaintiff does not come close to meeting this heightened standard.  Plaintiff does

23   not describe any false statements made by Defendant, let alone allege when, where, and how the

24   statements were made.  Plaintiff does not allege any specific facts to support her allegation that

25   Defendant assured her that she was getting a loan modification.

26   At the hearing, Plaintiff explained that her fraud claims concerned loan origination during

27   refinancing in 2003, 2007, and 2009, because she wanted a fixed rate mortgage, but instead was

28

United States District Court
Northern District of California

1   issued adjustable rate mortgages (ARM).  In 2009, Plaintiff claimed that she was promised that

2   she would receive a fixed rate mortgage in 2011, if she refinanced for another ARM.

3          Defendant argues that Plaintiff's fraud claims are time-barred.  California has a three year

4   statute of limitations for fraud claims. Cal. Civ. Proc. Code § 338(d).  Generally, "the three-year

5   period does not begin to run until the plaintiff has actual or constructive notice of the facts

6   constituting the fraud" *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980).

7   "Constructive notice is knowledge of facts sufficient to make a reasonably prudent person

8   suspicious of fraud, thus putting him on inquiry." *Id.*  All loan terms were contained in the loan

9   documents that Plaintiff signed, so even if Plaintiff did not read them, she had constructive

10  notice of all terms at the time of origination.  *See, e.g., Hague v. Wells Fargo Bank, N.A.*, C11-

11  02366 TEH, 2012 WL 1029668, at *5 (N.D. Cal. Mar. 26, 2012) (fraud claim was time-barred

12  when the terms of the loan were provided at signing, such that "reasonable diligence would have

13  enabled Plaintiff to discover the problem.").  Because fraud is governed by a three-year

14  limitations period, Plaintiff would have had to bring her fraud claims within three years of her

15  last origination, which would have been in 2012.  Since Plaintiff did not file her lawsuit until

16  2013, her claims are time-barred, so the Court need not address whether her fraud claims are

17  preempted by HOLA.

18          ii.   TILA Claim (Claim 2)

19          Plaintiff's second claim is titled "Violation of TILA, 15 U.S.C. § 1601, *et seq.*"  TILA

20  has a one-year statute of limitations for civil damages claims.  *Falcocchia v. Saxon Mortg., Inc.*,

21  709 F. Supp. 2d 860, 867 (E.D. Cal. 2010).

22          Here, Plaintiff alleges that Defendant violated TILA at the time of the loan origination.

23  Plaintiff further alleges that "any and all statutes of limitation relating to disclosures . . . were

24  tolled due to the hidden nature of this violation, which did not reveal itself until within the past

25  year." (Compl. ¶ 18.)  But Plaintiff also alleges that she discovered the "procedural

26  improprieties" through her Chapter 7 bankruptcy case.  Her bankruptcy case was closed in

27  December 2010.  *See In re Linda McDonald*, No. 10-70625, Dkt # 18 (Bankr. N.D. Cal. 2010).

28  Therefore, according to her own allegations, she should have discovered any procedural

1   improprieties by that time.  This lawsuit, however, was not filed until 2013, which is more than a

2   year later.  Accordingly, her TILA claim is time-barred and must be dismissed without leave to

3   amend.

4            iii.   California Civil Code § 2923.5 (Claim 4)

5            Plaintiff's fourth cause of action is titled "Violation of California Civil Code Section

6   2923.5 *et seq. I* [sic] Request for Declaratory Relief."  Plaintiff alleges that Wells Fargo recorded

7   a notice of default in July 2009 without first contacting her to explore alternatives in violation of

8   Civil Code § 2923.5. (Compl. ¶ 35.)  Wells Fargo contends that a notice of default was never

9   filed and that, as a result, the claim is not ripe. (Def.'s Mot. at 14.)  At the hearing, Plaintiff

10  acknowledged that what she had received in 2009 may have been a letter from Wells Fargo, and

11  that, while she was currently behind on her payments, she was not in default.

12           Moreover, even if the claim were ripe, it is preempted by the Home Owners' Loan Act

13  (HOLA).  *See* 12 C.F.R. § 560.2.  HOLA expressly preempts state laws with respect to the

14  "entire field of lending regulation for federal savings associations," and states that "federal

15  savings associations may extend credit as authorized under federal law, including this part,

16  without regard to state laws purporting to regulate or otherwise affect their credit activities,

17  except to the extent provided in paragraph (c) of this section."  12 C.F.R. § 560.2(a).

18           HOLA specifically provides that state laws purporting to impose requirements regarding

19  "[l]oan-to-value ratios," "terms of credit, including amortization of loans and the deferral and

20  capitalization of interest and adjustments to the interest rate," "[d]isclosure and advertising," and

21  "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in,

22  mortgages" are all preempted.  *Id.* § 560.2(b).  However, state laws are not preempted "to the

23  extent that they only incidentally affect the lending operations of Federal savings associations or

24  are otherwise consistent with the purposes of paragraph (a) of this section."  *Id.* § 560.2(c).  For

25  example, state contract, property and tort laws are not preempted if they meet the above

26  requirements.  *Id.*

27  ///

28  ///

United States District Court
Northern District of California

The Ninth Circuit has held that in order to analyze whether state law is preempted by HOLA:

> . . . the first step [is] to determine whether the type of law in question is listed in paragraph (b).  If so, the analysis will end there; the law is preempted.  If the law is not covered by paragraph (b), the next question is whether the law affects lending.  If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted.  This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c).  For these purposes, paragraph (c) is intended to be interpreted narrowly.  Any doubt should be resolved in favor of preemption.

*Silvas v. E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008).

Preliminarily, HOLA applies to this case even though Wells Fargo is not a federal savings association, because Plaintiff's loan originated with a federal savings bank, World Savings Bank.  *See*, *e.g.*, *Appling v. Wachovia Mortg., FSB*, 745 F. Supp. 2d 961, 971 (N.D. Cal. 2010) (holding that "although Wells Fargo itself is not subject to HOLA and OTS regulations, this action is nonetheless governed by HOLA because Plaintiff's loan originated with a federal savings bank and was therefore subject to the requirements set forth in HOLA and OTS regulation."); RJN, Ex. A, B.

Federal courts have found that allegations relating to foreclosure are preempted by HOLA, because they fall within § 560.2(b)(10)—that is, the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages."  Federal courts have specifically found that § 2923.5 is preempted by HOLA.  *See*, *e.g.*, *Ngoc Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1033 (N.D. Cal. Oct. 27, 2010), *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1127 (N.D. Cal. 2010) (collecting cases with similar holdings).  Thus, this cause of action must be dismissed with prejudice.

### iv.   Business and Professions Code § 17200 (Claim 5)

Plaintiff's fifth claim is titled "Predatory Lending Violation of Truth in Lending," but appears to invoke California Business & Professions Code § 17200.  This claim is also preempted by HOLA, because is based entirely on conduct at the time of loan origination.  *See Jones-Boyle v. Washington Mut. Bank, FA*, CV 08-02142 JF (PVT), 2010 WL 2724287 (N.D. Cal. July 8, 2010) (finding that plaintiff's claims against lender "based upon solely its lending activities and representation in loan

documents" were preempted).  Plaintiff alleges that "the subject loan documents do not plainly and prominently disclose the good faith estimate of closing costs, the site of a yield spread premium paid directly or indirectly, in whole or in part to a mortgage loan officer." (Compl. ¶ 44.)  Plaintiff's UCL allegations of the invalidity of the underlying debt are based solely on the lending activities at the time of origination, and are therefore preempted.

Even if Plaintiff's § 17200 claim was not preempted, Plaintiff cannot show that Wells Fargo's actions were unlawful.  In order to state a claim for UCL, Plaintiff must identify an underlying statute that Wells Fargo violated. *Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060, 28 Cal. Rptr. 3d 933, 938 (2005) (no § 17200 liability "for committing 'unlawful business practices' without having violated another law").  Plaintiff's complaint contains cursory references to RESPA and TILA violations, but this is insufficient to state a claim, as they are conclusory statements that do not meet pleading standards. *Iqbal*, 556 U.S. at 678. At any rate, any RESPA or TILA claims stemming from loan origination are also time-barred.[2]

Accordingly, Plaintiff's fifth cause of action must be dismissed without leave to amend.

### IV. CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant Wells Fargo's motion to dismiss Plaintiff's complaint in full and without leave to amend, as all of Plaintiff's claims, even if they were not preempted, are barred by their applicable statutes of limitation.  The Clerk is ordered to close the case.

Dated: December 12, 2013

KANDIS A. WESTMORE
United States Magistrate Judge

---

[2] The statute of limitations for TILA claims is one year from the date of the transaction. 15 U.S.C. § 1640(e). The statute of limitations for RESPA claims is three years. 12 U.S.C. § 2605.